UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YUNIERKY BURGOS
BONACHEA,

        Plaintiff,

    v.

SECRETARY KRISTI NOEM, *et al.*,

        Defendants.

Case No. 2:26-cv-653-KCD-NPM

## ORDER

Petitioner Yunierky Burgos Bonachea has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued detention breaches the Fifth Amendment, the Administrative Procedure Act, the Equal Protection Clause, the Accardi Doctrine, and the Suspension Clause. Respondents oppose the petition. (Doc. 7.) For the reasons below, the petition is **DENIED**.

## I. Background

Bonachea illegally entered the United States in August 2022. (Doc. 1 ¶ 17.) Important for reasons discussed below, he was detained at the border,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

given a "Notice of Custody Determination" under "section 240," and released. (*Id.* ¶ 19, 20, 74; Doc. 1-2 at 2.) Bonachea was recently arrested by ICE and has been in immigration custody since February 14, 2026. (Doc. 1 at 2.)[2] After processing, he landed at Alligator Alcatraz in the Middle District of Florida. (Doc. 9 at 2.) Bonachea has a final order of removal. (Doc. 1 ¶ 19.) His appeal of that order is pending. (Doc. 13 at 6.)[3]

## II. Discussion

Bonachea's habeas petition presses several claims. First, his detention violates the INA because he is eligible for a bond hearing but is being denied such relief. (*Id.* at 15-18.) Second, his detention without a bond hearing violates the Fifth Amendment's Due Process Clause. (*Id.* at 19-21.) Third, ICE "acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law." (*Id.* at 27-29.) Fourth, categorically denying him a bond hearing violates the Fifth Amendment's equal protection guarantee because he is being treated differently from similarly situated noncitizens in standard removal proceedings. (*Id.* at 21-23.) Fifth, the lack of individualized review offends the Suspension Clause by leaving him without any meaningful administrative or judicial avenue to test the legality of his

---

[2] The habeas petition is not paginated, so the Court uses the page numbering generated by its electronic filing system.

[3] Bonachea's reply brief is also not paginated, so the Court uses the page numbering generated by its electronic filing system.

confinement. (*Id.* at 23-25.) Finally, relying on the *Accardi* doctrine, Bonachea argues the government ran afoul of its own regulations governing warrantless immigration arrests. (*Id.* at 25-27.) The Court addresses each of these claims below.

### A. INA

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings,* 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that

decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Bonachea, he is entitled to a bond hearing, and § 1226 is the vehicle through which he would obtain such relief. But this argument runs headlong into the facts. Bonachea was apprehended at the border. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States.").

An alien "who arrives in the United States (whether or not at a designated port of entry[)] shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Bonachea concededly meets this definition. He was stopped at the border, had no legal status, and sought entry. *See Jennings*, 583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not been admitted, is treated as an applicant for admission.").

Applicants for admission who are inadmissible must be detained pending removal proceedings. *Id.* at 297. The Government has only one alternative under this framework—it can temporarily release the noncitizen on humanitarian parole. *Id.* at 288. But make no mistake, this is not a lawful

4

entry. A paroled noncitizen has not been admitted to the country. Instead, the law treats them as if they never crossed the threshold. When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Bonachea may have physically spent time in the interior of the United States after his release, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Bonachea, nevertheless, seems to argue that because the Government placed him in standard removal proceedings under § 240, his detention must be governed by § 1226(a)—which allows for bond hearings—rather than the mandatory detention provision of § 1225(b)(2). (Doc. 1 at 19.) But that argument trips over the statutory text. Section 1225(b)(2)(A) commands that if an examining officer determines an applicant for admission is not "clearly and beyond a doubt entitled to be admitted," which are the facts here, "the

alien shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). Section 1229a is the statutory codification of § 240. So pulling all this together, the INA explicitly pairs § 1225 mandatory detention with § 240 removal proceedings. The Supreme Court made this exact point in *Jennings*, explaining that § 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." 583 U.S. at 309. The Court therefore rejects the premise that simply receiving a Notice to Appear for a § 240 hearing magically pulls a noncitizen out of § 1225.

Nothing about the sequence of events surrounding Bonachea's entry suggests that he is anything but an applicant for admission under § 1225. He entered the United States and was immediately apprehended at the border. Upon his encounter with authorities, he expressed a fear of returning to Cuba and sought protection. When an individual arrives at the border without valid entry documents and credible claims of persecution, as here, the INA dictates a specific procedural path: the Government places them in removal proceedings so an immigration judge can review their claims for relief. *See Jennings*, 583 U.S. at 288. Every step—from his initial apprehension at the border to the ongoing review of his protection claims by an immigration judge under § 240—is a hallmark of the §1225(b)(2) framework.

As mentioned, when an inadmissible alien arrives at the border and seeks admission, § 1225 gives the Government exactly two choices. Option

6

one: mandatory detention. Option two: temporary release "on parole." *Jennings*, 583 U.S. at 288. Because parole is the sole legal mechanism Congress provided to release an applicant for admission, like Bonachea, the law must treat his release as a parole. And when that period of liberty ends, he goes right back to where the statute demands. *See Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *6 (S.D.N.Y. Dec. 15, 2025) ("Whatever 'grace' Congress and the Executive Branch have thus far bestowed upon Petitioner, including not only his initial parole but also his examination by an immigration officer under Section 1225(b)(2)(A) itself, bestows no additional rights.").

Bonachea—who has never been admitted and was found by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted" 8 U.S.C. § 1225(b)(2)(A)—is properly in custody under §1225(b)(2). Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Bonachea's continued detention without a bond hearing cannot be in violation of the INA.

### B. Due Process Clause

Even if Bonachea's detention without a bond hearing is authorized by the INA, he argues it violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 19.) Not so. As this Court has already explained in detail (and which analysis is adopted here) such a

7

claim is not available for aliens held under § 1225. *See Lezcano v. Ripa*, No. 2:26-cv-766-KCD-DNF, 2026 WL 1004523, at \*2-5 (M.D. Fla. Apr. 14, 2026). One can certainly understand Bonachea's frustration with his current position, waiting in a detention cell for months while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait. We are not staring down the barrel of indefinite detention—the constitutional danger the Supreme Court found so problematic in *Zadvydas*. Bonachea's current custody has a clear statutory endpoint: it lasts only "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. And if he eventually receives a final order of removal after his appeal is completed, only to have his deportation stall, the courthouse doors will open for him to seek relief under *Zadvydas*. Because the existing framework comes with a built-in expiration date, there is no reason to engineer a constitutional workaround.

## C. Administrative Procedure Act

Bonachea also tries to repackage his statutory challenge as a violation of the Administrative Procedure Act. He contends that the Government's categorical refusal to consider him for release on bond is an "arbitrary" and "capricious" agency action. (Doc. 1 at 27-28.)

The difficulty here is twofold. First, Bonachea has brought this claim in a habeas petition, which is the wrong vehicle for the job. The writ of habeas

corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for this claim. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Bonachea has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Bonachea

9

is challenging here—the APA simply leaves no room for this redundant claim. *See Fleurimond*, 2026 WL 507542, at \*3; *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at \*7 (D.N.M. Feb. 11, 2026).

### D. Equal Protection Clause

Bonachea next takes aim at his detention under the equal protection component of the Fifth Amendment. He sees a constitutional flaw in the Government's disparate treatment: because he has been placed in standard § 240 removal proceedings, he argues he is similarly situated to other noncitizens in those proceedings who routinely receive bond hearings under § 1226(a). Categorically denying him that same opportunity, he claims, is an arbitrary and discriminatory classification. (*See* Doc. 1 at 21-23.)

Bonachea does not allege discrimination based on membership in a protected class such as race or gender. Instead, he asserts a "class of one" claim as recognized by the Supreme Court in *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000). (*See* Doc. 1 at 22.) "To prove a class of one claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009). The Eleventh Circuit has "frequently noted that the similarly situated

10

requirement must be rigorously applied in the context of class of one claims."
*Id.*

The trouble for Bonachea begins with that rigorous first requirement. To state a viable class-of-one claim, a petitioner must point to comparators who are "prima facie identical in all relevant respects." *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010). But Bonachea offers only a sweeping generalization, pointing broadly to all other noncitizens placed in § 240 removal proceedings. That brush is far too broad. Bonachea is not just any noncitizen facing removal. As explained, he is an applicant for admission who was apprehended at the border. To show he was unlawfully singled out, he would need to identify other applicants for admission whom the government inexplicably permitted to seek a bond hearing. *See E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987) ("Different treatment of dissimilarly situated persons does not violate the equal protection clause."). He identifies no such person. Without a valid comparator, the Court must conclude that his class-of-one equal protection claim collapses.

Even if Bonachea had pled what is needed, his claim still fails. Equal protection does not compel Congress to treat a noncitizen stopped at the border exactly the same as one who has lived inside the country for years. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never

11

entered runs throughout immigration law."). Congress could rationally conclude that individuals caught crossing the border without inspection—or who evade inspection entirely—pose a unique flight risk. Mandating their detention under § 1225(b)(2) is a sensible, logical tool to ensure they actually appear for their removal proceedings and do not abscond. Because the statutory scheme is rationally related to the legitimate goals of border control and immigration enforcement, the equal protection claim fails. *See Fleurimond*, 2026 WL 507542, at *2.

### E. Suspension Clause

Bonachea's Suspension Clause claim fares no better. The Suspension Clause provides that the "Privilege of the Writ of Habeas Corpus shall not be suspended." U.S. Const. art. I, § 9, cl. 2. Bonachea argues this guarantee is violated because the immigration court lacked jurisdiction to give him a bond hearing, allegedly leaving him without any meaningful administrative or judicial avenue to test his confinement. (Doc. 1 at 23-25.)

But that argument confuses a mechanism of review with a guarantee of a specific process. The historic core of the writ of habeas corpus is to test the lawfulness of executive detention. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 127 (2020). It is not a freestanding constitutional entitlement to a discretionary bond hearing. The very fact that Bonachea is currently before this Court, utilizing a § 2241 petition to

12

challenge the statutory and constitutional basis of his confinement, demonstrates that the writ is alive and well. The Court has entertained his petition, reviewed the Government's legal authority, and concluded that his ongoing detention is lawful under §1225(b)(2). *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) ("The Clause protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account."). The Suspension Clause does not guarantee that a petitioner will prevail on the merits, nor does it empower a court to override a valid statutory detention scheme simply because an administrative agency cannot offer bail. Because Bonachea has successfully accessed the federal courts to test the legality of his detention, no suspension of the writ has occurred.

### F. *Accardi* Doctrine

Bonachea mounts a final challenge based on the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The premise of that doctrine is straightforward: "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984).

Bonachea points to 8 C.F.R. § 287.8(c)(2)(ii), an immigration regulation stating that officers making a warrantless arrest must have reason to believe

13

the individual is "likely to escape before a warrant can be obtained." *Id.* Because he was complying with his immigration proceedings and allegedly posed no flight risk at the time of his apprehension, he insists his warrantless arrest—and the detention that followed—must be thrown out. (Doc. 1 at 25-27.)

Ultimately, even if there were a violation of 8 C.F.R. § 287.8(c)(2)(ii), the Court would not grant the extraordinary remedy Bonachea seeks: outright release from custody. As explained, § 1225(b)(2) mandates Bonachea's detention because he is an applicant for admission pending removal proceedings. A procedural quibble with how he was initially taken into custody cannot override Congress's inescapable command that he must remain detained now. What is more, if the Court were to order Bonachea's release, the Government would be legally obligated by the INA to re-arrest and detain him tomorrow. The law does not demand such a pointless exercise. The writ of habeas corpus exists to remedy currently unlawful confinement, not to orchestrate a revolving door of release and immediate re-detention when the underlying statutory basis for custody remains perfectly valid. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.").

14

### III. Conclusion

For all these reasons, Bonachea's challenges to his ongoing immigration detention fall short. Congress has mandated the detention of applicants for admission while their removal proceedings play out, and the Constitution does not stand in the way of that statutory command. Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the file.

**ORDERED** in Fort Myers, Florida on April 23, 2026.

Kyle C. Dudek
United States District Judge